IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**HILMA HALTON**                                                                      **PLAINTIFF**

V.                                                                              CIVIL ACTION NO. 2:14-CV-108-KS-MTP

**CL MEDICAL SARL,** *et al.*                                                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants in part and denies in part** Defendant CL Medical Inc.'s Motion to Dismiss [12] and **grants** Defendant CL Medical SARL's Motion to Dismiss [16].

### I. BACKGROUND

This is a product liability case. Plaintiff, a Mississippi resident, alleges that the I-STOP, a mid-urethral sling for treatment of stress urinary incontinence, caused her to suffer injuries. The I-STOP is manufactured in France by Defendant CL Medical SARL ("CLMS"), a French corporation. CLMS exports the device to Defendant CL Medical, Inc. ("CLMI"), a distributor who markets and sells it in the United States. CLMS and CLMI are subsidiaries of the same French holding corporation. Plaintiff brought design and warning defect claims under the Mississippi Products Liability Act ("MPLA"), as well as claims for negligence, breach of express and implied warranties, fraud, fraud by concealment, negligent misrepresentation, and negligent infliction of emotional distress. Both CLMS and CLMI filed Motions to Dismiss [12, 16], which the Court now addresses.

### II. MOTION TO DISMISS [12] (CLMI)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (punctuation omitted). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

### A.   *Claims Subsumed by the MPLA*

CLMI argues that several of Plaintiff's claims are subsumed by her MPLA claims. The MPLA governs "any action for damages caused by a product, including but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty . . . ." MISS. CODE ANN. § 11-1-63. Therefore, the MPLA applies to any claims arising from damages caused by a product. *Elliott v. El Paso Corp.*, No. 2013-IA-01338-SCT, 2015 Miss. LEXIS 457, at *11 (Miss. Sept. 3, 2015) (citing MISS. CODE ANN. § 11-1-63).

### 1.   *Count 3 – Negligence*

2

The MPLA specifically provides that it governs negligence claims for damages caused by a product. MISS. CODE ANN. § 11-1-63; *see also Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 602 (N.D. Miss. 2013); *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 844-45 (S.D. Miss. 2010); *Hill v. Forest Labs., Inc.*, 2:06-CV-244-KS-MTP, 2014 U.S. Dist. LEXIS 78057, at *5-*6 (S.D. Miss. June 6, 2014) (regardless of how plaintiff framed the claim – as one for damages caused by a product, by a defendant's failure to test a product, or by a defendant's promotion of a product – the case ultimately arose from a defective product and was within the scope of the MPLA). Here, Plaintiff claims that CLMI breached its duty of care by "marketing, advertising, promoting, and selling" the I-STOP device "without an adequate warning of the significant and dangerous risks associated with it," and "without providing adequate training or instructions regarding how to avoid or minimize the significant injuries that could be caused by" it. Therefore, Plaintiff's negligence claims against CLMI are governed by the MPLA, and Count 3 of the Complaint [1] is subsumed by Counts 1 and 2. The Court grants CLMI's motion to dismiss Count 3 insofar as it is asserted as an independent tort claim outside the scope of the MPLA.

   2.   *Count 4 – Implied Warranty*

The MPLA specifically provides that it governs claims for breach of an implied warranty arising from damage caused by a product. MISS. CODE ANN. § 11-1-63; *see also Elliott*, 2015 Miss. LEXIS 457 at *12 n. 24. Here, Plaintiff claims that CLMI breached implied warranties of merchantability and fitness for a particular purpose by selling a defective product. Therefore, Count 4 of the Complaint is governed by the

3

MPLA, and it is subsumed by Counts 1 and 2. The Court grants CLMI's motion to dismiss Count 4 insofar as it asserted as an independent tort claim outside the scope of the MPLA.

    3.    *Count 6 – Fraud*

The MPLA governs "any action for damages caused by a product . . . ." MISS. CODE ANN. § 11-1-63; *see also Elliott*, 2015 Miss. LEXIS 457 at *11. Plaintiff's fraud claim arises from CLMI's fraudulent representations about its product's safety, effectiveness, and reliability. Plaintiff contends that she relied on CLMI's misrepresentations, used the defective product, and suffered injuries. Like her negligence and implied warranty claims, this is an "action for damages caused by a product," and, therefore, it is governed by the MPLA. Count 6 of the Complaint [1] is subsumed by Counts 1 and 2, and the Court grants CLMI's motion to dismiss Count 6 insofar as it is asserted as an independent tort claim outside the scope of the MPLA.

    4.    *Count 7 – Fraudulent Concealment*

The MPLA governs "any action for damages caused by a product . . . ." MISS. CODE ANN. § 11-1-63; *see also Elliott*, 2015 Miss. LEXIS 457 at *11. Plaintiff alleges that CLMI knew or should have known that use of its product carried certain risks, and that the product was neither safe nor effective. Plaintiff further alleges that CLMI represented to physicians and consumers that the product was safe and effective, despite possessing knowledge to the contrary. Accordingly, Plaintiff contends that CLMI breached its duty to warn consumers and physicians of the product's defective nature. This claim is "for damages caused by a product," and, therefore, it is governed

by the MPLA. MISS. CODE ANN. § 11-1-63; *Elliott*, 2015 Miss. LEXIS 457 at *11. Count 7 of the Complaint [1] is subsumed by Counts 1 and 2, and the Court grants CLMI's motion to dismiss Count 7 insofar as it is asserted as an independent tort claim outside the scope of the MPLA.

    5.    *Count 8 – Negligent Misrepresentation*

This Court has held that the MPLA subsumes negligent misrepresentation claims arising from a defective product. *See, e.g. Gardley-Starks*, 917 F. Supp. 2d at 602; *Lashley v. Pfizer, Inc.*, 877 F. Supp. 2d 466, 471 (S.D. Miss. 2012); *Austin v. Bayer Pharms. Corp.*, No. 5:13-CV-28-KS-MTP, 2013 U.S. Dist. LEXIS 137480, at *21 (S.D. Miss. Sept. 25, 2013). Plaintiff contends that CLMI misrepresented to consumers and physicians that its product had been adequately tested, and that it was safe and effective – breaching its duty to provide adequate and accurate warnings. This claim is "for damages caused by a product," and, therefore, it is governed by the MPLA. MISS. CODE ANN. § 11-1-63; *Elliott*, 2015 Miss. LEXIS 457 at *11. Count 8 of the Complaint [1] is subsumed by Counts 1 and 2, and the Court grants CLMI's motion to dismiss Count 8 insofar as it is asserted as an independent tort claim outside the scope of the MPLA.

    6.    *Count 9 – Negligent Infliction of Emotional Distress*

This Court has held that the MPLA subsumed claims for negligent infliction of emotional distress arising from a defective product. *Austin*, 2013 U.S. Dist. LEXIS 137480 at *24-*25; *Adams v. Energizer Holdings, Inc.*, No. 3:12-CV-797-TSL-JMR, 2013 U.S. Dist. LEXIS 56432, at *6 n. 1 (S.D. Miss. Apr. 19, 2013). Plaintiff alleges

that CLMI caused her to suffer emotional distress by marketing and selling a defective product which harmed her. This claim is "for damages caused by a product," and, therefore, it is governed by the MPLA. MISS. CODE ANN. § 11-1-63; *Elliott*, 2015 Miss. LEXIS 457 at *11. Count 9 of the Complaint [1] is subsumed by Counts 1 and 2, and the Court grants CLMI's motion to dismiss Count 9 insofar as it is asserted as an independent tort claim outside the scope of the MPLA.

### B.     *Count 5 – Express Warranty*

CLMI argues that Plaintiff pleaded insufficient facts to state a claim under the MPLA for breach of an express warranty. Specifically, CLMI argues that Plaintiff failed to identify the specific statement or warranty upon which she relied, the named Defendant who made it, that she relied upon it, and that it was false.

The MPLA provides, in pertinent part:

(a)   The manufacturer, designer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:

   (i)   . . .

      4.   The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

(ii)   The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii)   The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

MISS. CODE ANN. § 11-1-63(a). "[A]n express warranty is any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product." *Forbes v. GMC*, 935 So. 2d 869, 876 (Miss. 2006).

Plaintiff generally alleged that CLMI marketed the product to physicians and patients as a safer and more effective device for treating incontinence. Plaintiff specifically noted CLMI's website, which allegedly claims that the "I-STOP provides patients with a fast, effective and minimally invasive procedure," that the product is "based upon the results of years of clinical research and surgical feedback," and that it has "superior characteristics in the clinical setting." Plaintiff also specifically noted CLMI's newsletter from March 2013 which allegedly provided: "I-Stop was a sling with a novel weaving pattern . . . . [I]ts edges were looped and allowed the sling to be adjusted without traumatizing the surrounding tissue. I-STOP was available with needles that allowed me to tailor my approach to the specific need of my patients." Plaintiff alleged that she and her physician relied upon these and other representations in using the I-STOP, that it did not conform to the representations and perform as represented, and that she was harmed by its failure to do so.

Therefore, Plaintiff identified some specific statements in support of her express warranty claim. She also alleged that they were false, that she relied upon them in deciding to use the product, and that she was injured by the product's failure to conform to the statements. Accordingly, the Court concludes that she pleaded sufficient facts to state a plausible express warranty claim under the MPLA. *See Little v. Smith & Nephew, Inc.*, No. 1:15-CV-28-GHD-DAS, 2015 U.S. Dist. LEXIS 75666, at *27-*29

(N.D. Miss. June 11, 2015).

## C. *Punitive Damages*

Finally, CLMI argues that Plaintiff pleaded insufficient facts to state a plausible claim for punitive damages. "Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). Punitive damages are generally only allowed "where the facts are highly unusual and the cases extreme." *Wise v. Valley Bank*, 861 So. 2d 1029, at 1035 (Miss. 2003). "[S]imple negligence is not of itself evidence sufficient to support punitive damages, but accompanying facts and circumstances may be used to show that that portion of defendant's conduct which constituted proximate cause of the accident was willful and wanton or grossly negligent." *Choctaw Maid Farms v. Hailey*, 822 So. 2d 911, 924 (Miss. 2002). In the products liability context, punitive damages may be appropriate where the designer knew that the product was defective but sold it anyway. *See Cooper Tire & Rubber Co. v. Tuckier*, 826 So. 2d 679, 690 (Miss. 2002) (where plaintiff presented evidence that the defendant knew bad stock was used to manufacture product, it was proper to consider punitive damages).

Plaintiff alleged specific statements by CLMI regarding the safety and efficacy of its product. She alleged that CLMI knew or had reason to know that those statements were false at the time that they were made. She further alleged that CLMI

knew that there had been insufficient testing to assess the product's safety or efficacy, but that it marketed and sold the product anyway. These allegations are sufficient to state a plausible claim for punitive damages.

### III. MOTION TO DISMISS [16] (CLMS)

Defendant CL Medical SARL ("CLMS") filed a Motion to Dismiss [16], among other reasons, for lack of personal jurisdiction. "A federal court siting in diversity may exercise personal jurisdiction only to the extent permitted [in] a state court under state law." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citations omitted). "The court may only exercise jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the federal Constitution." *Id.* Here, the Court need only consider the due process requirements.

"When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident . . . . A plaintiff satisfies this burden by presenting a prima facie case for personal jurisdiction." *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 577 (S.D. Miss. 2012) (citations omitted). "The district court is not obligated to consult only the assertions in the plaintiff's complaint . . . . Rather, the district court may consider the contents of the record at the time of the motion, including affidavits . . . ." *Paz*, 445 F.3d at 812 (citations omitted). But "uncontroverted allegations in the plaintiff's complaint must be accepted as true, and all disputed facts must be construed in the plaintiff's favor." *Blacklidge Emulsions, Inc. v. Blankenship*, No. 1:13-CV-293,

9

2013 U.S. Dist. LEXIS 173082, 2013 WL 6492876, at *1 (S.D. Miss. Dec. 10, 2013) (citations omitted).

## A.     *Alter Ego Theory*

Before the Court considers the due process requirements, it must address the threshold question of whether CLMI's contacts with Mississippi should be attributed to CLMS for purposes of the Court's analysis. Plaintiff argues that CLMI is an alter ego of CLMS, and that its actions are imputed to CLMS.

"Courts have long presumed the institutional independence of related corporations . . . when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). The proponent of an alter ego theory of personal jurisdiction can rebut this presumption with "clear evidence" of "one corporation asserting sufficient control to make the other its agent or alter ego." *Dickson*, 179 F.3d at 338. In a diversity case, the Court should conduct the alter ego analysis required by the law of the forum state. *Adm'rs of Tulane Educ. Fund v. IPSEN, S.A.*, 450 F. App'x 326, 330 n. 5 (5th Cir. 2011). However, "[s]tate and federal alter ego tests are essentially the same," *Century Hotels v. United States*, 952 F.2d 107, 110 n. 4 (5th Cir. 1992), and a district court's consideration of the federal common law factors provided in *Hargrave v. Fibreboard Corporation*, 710 F.2d 1154, 1159 (5th Cir. 1983), is sufficient. *IPSEN*, 450 F. App'x at 330 n. 5.

"Mississippi case law generally favors maintaining corporate entities and

avoiding attempts to pierce the corporate veil. The cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders . . . [,] whether such shareholders are individuals or corporations." *Canadian Nat'l Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (Miss. 2012). Piercing the corporate veil to reach a parent or sibling corporation "is not lightly undertaken by Mississippi courts." *Id.* The Court may only do so "in those extraordinary factual circumstances where to do otherwise would subvert the ends of justice," such as "where there is some abuse of the corporate form itself." *Id.* at 1116. The plaintiff must demonstrate something more than a shareholder using and controlling a corporation to promote its own ends. *Rosson v. McFarland*, 962 So. 2d 1279, 1286 (Miss. 2007). Specifically, "the corporate entity will not be disregarded . . . unless the complaining party can demonstrate: (1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." *Waltman*, 94 So. 3d at 1115.

The federal common law requirements are similar. To determine whether a court has personal jurisdiction over a parent corporation because of its subsidiary's actions, the Court considers the following factors: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether they share officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate accounting systems; (6) whether the

11

parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over its daily operations. *Dickson*, 179 F.3d at 339 (citing *Hargrave*, 710 F.2d at 1160). The Court considers the same factors when assessing the relationship between sibling corporations, but where there is "only a sibling corporate relationship," "an even stronger showing . . . should be required." *Dickson*, 179 F.3d at 338.

Despite her burden to make a prima facie case that CLMS controls CLMI, Plaintiff presented no evidence relevant to this issue. Uroplasty, Inc.'s Form 8-K [22-5] only shows that CLMS entered into an agreement with Uroplasty, Inc., and granted it the exclusive right to distribute the I-STOP in the United States for six years beginning January 1, 2006. It provides no information regarding CLMS's relationship with CLMI. Plaintiff also provided an affidavit from her counsel which provided the following assertions:

> 6. CL MEDICAL SARL and CL MEDICAL INC. are two of a family of companies all operating to manufacture and distribute devices to treat urinary incontinence, primarily the I-STOP device.
>
> 7. Plaintiff is unaware of any operations by CL MEDICAL INC. other than activities associated with selling and distributing products made by CL MEDICAL SARL.

These assertions provide no information regarding the amount of control, if any, that CLMS exerts over CLMI.

In contrast, CLMS presented a declaration [17-1] from its Chief Operating Officer, Vincent Goria. The declaration contains several undisputed facts pertinent to the Court's analysis. CLMS is a French corporation, with its principal place of business

in Sainte Foy Les Lyon, France. It has never maintained an office in Mississippi. It has never been registered to do business in the United States. It does not manufacture, market, sell, or distribute the I-STOP device in Mississippi. It does not transact any business in Mississippi or have an agent for doing so. Rather, CLMS manufactures the I-STOP devices in France and exports them to CLMI. CLMI is CLMS's sibling corporation, and it sells and distributes the I-STOP devices in the United States.

Several of Plaintiff's undisputed allegations from the Complaint [1] are also relevant. Plaintiff alleged that CLMS and CLMI are both owned by the same French holding company, CLJ Financial Group, which is owned by Vincent and Caroline Goria. Mr. Goria is one of CLJ's two board members. The Gorias allegedly own a majority interest of CLMI. Mr. Goria is CLMI's founder and President, while Mrs. Goria is its Treasurer and Secretary. They are its only board members. Mr. Goria is also allegedly the founder and President of CLMS. CLMI's website purportedly refers to both companies as "CL Medical." Plaintiff alleges – upon information and belief – that Mr. Goria exerts day-to-day control over both companies, but she alleged no specific facts to support this conclusion.

The presumption of corporate independence can only be overcome by "clear evidence" of "one corporation asserting sufficient control to make the other its agent or alter ego." *Dickson*, 179 F.3d at 338; *see also Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 346 (5th Cir. 2004); *Gonzalez v. Bank Am. Ins. Servs.*, 454 F. App'x 295, 300 (5th Cir. 2011); *IPSEN,* 450 F. App'x at 329. Plaintiff provided no evidence of "flagrant disregard of corporate formalities" or "fraud or other equivalent misfeasance."

13

*Waltman*, 94 So. 3d at 1115. She provided no evidence regarding the companies' books or the degree of control, if any, that CLMS exerted over the operations of CLMS. She only alleged that the two companies shared the same ownership and directors. This is insufficient to demonstrate that CLMI is an alter ego of CLMS, and the Court will not consider CLMI's actions when determining whether it has personal jurisdiction over CLMS.

## B.  *Due Process Requirements*

The Fourteenth Amendment's Due Process Clause "permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Unified Brands*, 868 F. Supp. 2d at 577. "Minimum contacts . . . can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Id.*

Plaintiff argues that CLMS has enough contacts with Mississippi to confer specific jurisdiction. "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). The Court "applies a three-step analysis to determine specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the

14

defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Jackson v. Tanfoglio Guiseppe S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010).

The Court's inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014). "[T]he relationship must arise out of contacts that the defendant himself creates with the forum State," and the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122.

> [A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.

*Id.* at 1123.

Plaintiff apparently relies on a stream-of-commerce theory of specific jurisdiction. "In cases involving a product sold or manufactured by a foreign defendant," the Fifth Circuit follows a "'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). Under this approach, "mere foreseeability or awareness is a constitutionally sufficient basis for

15

personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce, but the defendant's contacts must be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.*

Here, Plaintiff argues that it was foreseeable to CLMS that its products would end up in Mississippi because it entered into a distribution agreement with CLMI to market and sell those products in the United States. Plaintiff's complaint contains several undisputed specific allegations relevant to this argument. Plaintiff alleged that CLMS and CLMI are both owned by the same French holding company, CLJ Financial Group, which is owned by Vincent and Caroline Goria. Mr. Goria is one of CLJ's two board members. The Gorias allegedly own a majority interest of CLMI. Mr. Goria is CLMI's founder and President, while Mrs. Goria is its Treasurer and Secretary. They are its only board members. Mr. Goria is also allegedly the founder and President of CLMS. CLMI's website purportedly refers to both companies as "CL Medical." Plaintiff contends that CLMS must know anything that CLMI knows, and, therefore, it was foreseeable to CLMS that its products would end up in Mississippi. Plaintiff cites *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174 (5th Cir. 2013), in support of this argument.

The undersigned judge is quite familiar with the *Ainsworth* case.[1] There, the

---

[1]*See Ainsworth v. Cargotec USA, Inc.*, No. 2:10-CV-236-KS-MTP, 2011 U.S. Dist. LEXIS 109255 (S.D. Miss. Sept. 23, 2011) (Starrett, J.); *Ainsworth v. Cargotec USA, Inc.*, No. 2:10-CV-236-KS-MTP, 2011 U.S. Dist. LEXIS 49665 (S.D. Miss. May 9, 2011) (Starrett, J.).

record contained evidence that the foreign manufacturer had entered into an exclusive sales and distribution agreement with an American corporation. *Ainsworth*, 716 F.3d at 177. The distributor was the manufacturer's only customer in the United States, and the sales agreement specifically defined the distributor's marketing area as the entire United States. *Id.* The manufacturer knew that the distributor marketed the forklift throughout the United States, and it made no attempt to limit the scope of the distributor's marketing efforts. *Id.* Through this arrangement, the distributor sold 203 of the foreign manufacturer's forklifts – worth approximately €3,950,000 – to customers in Mississippi, accounting for approximately 1.55% of the foreign manufacturer's United States sales during the relevant time period. *Ainsworth*, 716 F.3d at 179. The record also contained evidence that the foreign defendant "designed and manufacture[d] a forklift for poultry-related uses," and "that Mississippi is the fourth largest poutry-producing state in the United States." *Id.*

Here, the record does not contain a copy of the distribution agreement between CLMS and CLMI – a crucial piece of evidence in *Ainsworth* insofar as it provided the foreign manufacturer with notice that its products were being marketed in Mississippi. *Id.* at 177. Furthermore, there is no evidence here of a product specifically manufactured for an industry located in the state of Mississippi. *Id.* at 179. Finally, the most obvious distinction between *Ainsworth* and the present case is the disparity between the number of contacts. In *Ainsworth*, 203 of the foreign defendant's products ended up in Mississippi. *Id.* Here, Plaintiff alleged that only four of the I-STOP devices were sold to patients in Mississippi.

For these reasons, the Court finds that Plaintiff's allegations fall short of the mark set by *Ainsworth* and the Fifth Circuit's stream-of-commerce jurisprudence. In *Ainsworth*, the record contained hard evidence that the foreign manufacturer knew or should have known that the domestic distributor targeted Mississippi as a potential market. Here, Plaintiff's argument is more attenuated, relying on inferences and supposition from the companies' shared ownership without having provided sufficient evidence to establish that they are alter egos of one another.[2] Additionally, Plaintiff alleged that only *four* of the I-STOP devices were sold to patients in Mississippi, placing this case very close to – if not within – the narrow category of cases governed by the plurality opinion in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (a single, isolated sale is not sufficient to confer personal jurisdiction, even if it was anticipated).[3] In summary, Plaintiff has not demonstrated that CLMS intentionally availed itself of the privilege of conducting business in Mississippi, that it was reasonably foreseeable that its products would end up in Mississippi, or that it has minimum contacts with Mississippi. Accordingly, this Court may not exercise personal jurisdiction over it.

## C.   *Jurisdictional Discovery*

Plaintiff requests permission to conduct jurisdictional discovery to obtain more

---

[2]*See Allstate Ins. Co. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 508 (N.D. Tex. 2014) (court could not infer, from the minimal facts presented by plaintiff, that the foreign defendant knowingly benefitted from the Texas market).

[3]*See also Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 514-15 (D. N.J. 2011) (five or nine sales did not suggest a specific effort to sell in a state).

information regarding the connections between CLMS and Mississippi. She wants to submit interrogatories and requests for admissions to CLMS regarding its contacts with Mississippi, and she wants to submit requests for production of its correspondence with its domestic distributors regarding sales of the I-STOP in the United States.

As the party opposing dismissal and requesting jurisdictional discovery, Plaintiff bears the burden of demonstrating the necessity of such discovery. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). The Court has "broad discretion in all discovery matters." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856 (5th Cir. 2000). She "is not entitled to jurisdictional discovery when the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Monkton*, 768 F.3d at 434. "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly*, 213 F.3d at 856. Here, Plaintiff has not presented any specific facts – whether in allegations or evidence – indicating that CLMS intentionally availed itself of the privilege of conducting business in Mississippi, or that it was reasonably foreseeable that its products would end up in Mississippi. All she has provided is a string of inferences based on CLMS's shared corporate parentage with CLMI. Plaintiff should not be permitted to use this Court to facilitate a fishing expedition for facts to bolster her speculation. *Id.*; *Pipe Freezing Servs. v. Air Liquide Am., LP*, No. 2:09-CV-93-KS-MTP, 2009 U.S. Dist. LEXIS 81472, at *10 (S.D. Miss. Aug. 20, 2009).

### IV. CONCLUSION

For the reasons above, the Court **grants in part and denies in part** Defendant CL Medical Inc.'s Motion to Dismiss [12]. Specifically, the Court grants CL Medical Inc.'s Motion to Dismiss [12] as to Plaintiff's claims of negligence (Count 3), breaches of implied warranties (Count 4), fraud (Count 6), fraudulent concealment (Count 7), negligent misrepresentation (Count 8), and negligent infliction of emotional distress (Count 9). These claims are subsumed by Plaintiff's claims for warning and design defects under the MPLA (Counts 1 & 2). The Court denies the motion as to Plaintiff's claims for breaches of express warranties and punitive damages.

The Court also **grants** Defendant CL Medical SARL's Motion to Dismiss [16] for lack of personal jurisdiction. Plaintiff's claims against CL Medical SARL are dismissed without prejudice. The Court **denies** Plaintiff's request for jurisdictional discovery.

SO ORDERED AND ADJUDGED this 16th day of September, 2015.

>*s/ Keith Starrett*
>UNITED STATES DISTRICT JUDGE